1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

10

11

12   ARTHUR C. RUSSELL,

Petitioner,

13

14   v.

15   MAGGIE MILLER-STOUT,

Respondent.

16

CASE NO. C14-5361 RJB-JRC

REPORT AND RECOMMENDATION

NOTED FOR:
OCTOBER 10, 2014

17

18      The District Court has referred this petition for a writ of habeas corpus to United States

Magistrate Judge J. Richard Creatura. The Court's authority for the referral is 28 U.S.C. §

19

636(b)(1)(A) and (B), and local Magistrate Judge Rules MJR3 and MJR4. Petitioner filed the

20

petition pursuant to 28 U.S.C. § 2254.

21

22      The Court recommends denying this petition on the merits because petitioner fails to

show that the state court's ruling regarding his ineffective assistance of counsel claim were

23

objectively unreasonable.

24

1

## BASIS FOR CUSTODY

2       A jury convicted petitioner of rape of a child in the first degree-domestic violence (Dkt.

3  8, Exhibit 1).  The Kitsap County Superior Court sentenced him to 108 months of confinement

4  (Dkt. 8, Exhibit 1).

5

## FACTS AND PROCEDURL HISTORY

6       The Washington State Court of Appeals summarized the facts of the case:

7           Russell met CR's [court's footnote omitted] mother, Marilou, in 1993
        when Russell was in the Navy; the couple married in 1995. CR was born May 22,
8       1992, the youngest of Marilou Russell's five children. CR met Russell in the
        Philippines, her birthplace, when she was about two or three years old. After her
9       mother married Russell, CR came to think of him as her father. CR did not know
        her biological father.  When CR was growing up, they moved frequently because
10      of Russell's military service.  CR's mother worked and Russell would be at sea
        for six months at a time.
11          After Russell and Marilou married, the family moved to Japan from the
        Philippines. After two or three years there, they moved to Hawaii. They stayed in
12      Hawaii for about three years, where CR attended kindergarten to second grade
        and CR was age six through eight or nine. CR testified that in Hawaii Russell
13      began to caress her body all over with his hands. This occurred in their house,
        multiple times, and mostly in Russell's bedroom.
14          From Hawaii, the Russells moved to Bremerton just as CR was starting
        third grade. CR was about nine years old, and the family stayed in Washington
15      until CR was in fifth grade. After they moved to Washington, Russell continued
        to touch CR and started to touch her orally. Russell made CR perform oral sex on
16      him, and he also touched her vagina with his hands and mouth. CR testified that
        this occurred multiple times.
17          The family stayed in Washington for about three years, and then they
        moved to Florida. After they moved to Florida, the abuse escalated to multiple
18      occurrences of penile-vaginal intercourse.
            After two years in Florida, the family moved to Indiana, where the
19      intercourse continued. CR did not report it because she did not want anything to
        happen to Russell. Nevertheless, CR eventually told her mother about the abuse
20      while the family was living in Indiana. CR asked her mother not to call the police
        because she did not want Russell to get into trouble. After CR told her mother,
21      CR's relationship with Russell became awkward, but the abuse stopped. Her
        mother never reported it.
22          Around 2006, the family moved from Indiana to Las Vegas. Russell
        moved out of the family home in the spring of 2007, and returned to Washington
23      State. Russell and CR's mother began divorce proceedings.

24

REPORT AND RECOMMENDATION - 2

1
2

     Because of the divorce, CR's mother pressured CR to report the abuse. CR left home to stay with a friend and was ultimately placed in foster care. CR eventually reported the abuse to a school counselor. A social worker interviewed CR at her high school and she received counseling.

3
4
5
6
7
8
9

     The State of Washington charged Russell by amended information in Kitsap County Superior Court with first degree rape of a child–domestic violence, regarding his alleged abuse of CR while the family lived in Bremerton. Before trial, the State sought to admit evidence under ER 404(b) of acts of abuse Russell committed against CR in Japan and Hawaii before the family moved to Washington, and of acts committed in Florida and Indiana after they left Washington State.  The State alleged that Russell began abusing CR when she was three years old, while he was stationed in Japan.  The abuse continued as the family moved to each new location.  CR had no independent recollection of the abuse in Japan, but she did recall the abuse beginning in Hawaii.  CR also recalled it happening in Washington and continuing in Florida, where there was an allegation of penile-vaginal penetration.  CR also recalled abuse in Indiana, where she reported it to her mother, and thereafter it stopped.

10
11
12

     Defense counsel agreed that some of the evidence was admissible, stating that both sides needed to discuss what happened in Indiana. Counsel was more concerned about the earlier incidents in Japan and Hawaii. He objected that CR had no independent recollection of the events in Japan. He also expressed concern about whether CR was competent to testify about what had happened when she lived in Hawaii, due to her young age at the time. The defense therefore asked that the evidence of what occurred in Japan and Hawaii be excluded.

13
14

     Defense counsel admitted that evidence of penile penetration in Florida was relevant: "I concede it is somewhat probative." 1 RP at 19. He nevertheless argued that it should be excluded because it was more prejudicial than probative.

15
16
17

     The State responded that it intended to focus on the events in Washington. Nevertheless, it pointed out that the evidence was relevant because it showed progression and grooming behavior.  Russell went from touching and caressing in Hawaii, progressed to oral sex in Washington, and then to full penile-vaginal intercourse in Florida. The State argued that the evidence was corroborative and also showed Russell's "[lustful] disposition" toward CR. [Footnote omitted.] 1RP at 22.

18
19
20

     The trial court excluded the evidence regarding events in Japan. It admitted the evidence regarding events in Hawaii, noting that defense counsel's concerns about competency in this time frame could be addressed at cross-examination. The trial court also admitted the Florida evidence, finding it relevant and not more prejudicial than probative.

21
22
23

     At trial, CR testified to the events as above described. She also testified that she never told her siblings about the abuse. She also explained why she had denied the allegations to her stepsister, Shanna LaMar, who was Russell's biological daughter from a prior marriage, stating that she told Shanna the allegations were untrue because she did not want anyone else to know about them, to protect both Russell and herself. CR similarly testified that she told her sister-in-law, Kristine, that the allegations were not true.

24

1           CR's older sister, Kristal Russell, testified that she never actually saw
Russell sexually abuse CR. However, she shared a room with CR and

2   remembered that CR was often in Russell's bedroom with the door locked. This
happened only with CR, and it occurred in Hawaii, Washington, Florida, and

3   Indiana.
          Russell's daughter, LaMar, testified on his behalf. LaMar said she never

4   saw Russell touch CR inappropriately.
          Russell also testified at trial and denied ever touching CR inappropriately.

5   The jury found Russell guilty as charged.

6 (Dkt. 8, Exhibit 2, pp. 1-5).

7         Because respondent concedes that the only ground for relief in this petition is exhausted

8 the procedural history need not be addressed. The sole ground for relief in this petition is

9 summarized as follows:

10       1.      Ineffective assistance of trial counsel because trial counsel failed to
request a jury instruction instructing the jury that evidence of the alleged

11              prior sexual misconduct between Mr. Russell and the alleged victim could
be considered by the jury only for purposes of determining whether or not

12              Mr. Russell had a "lustful disposition" towards the alleged victim. Jury
instruction 1 required the jury to consider all evidence in determining Mr.

13              Russell's guilt.

14 (Dkt. 1, p. 5).

15                   <u>EVIDENTIARY HEARING NOT REQUIRED</u>

16         Evidentiary hearings are not usually necessary in a habeas case. According to 28 U.S.C.

17 §2254(e)(2) (1996), a hearing will only occur if a habeas applicant has failed to develop the

18 factual basis for a claim in state court, and the applicant shows that: (A) the claim relies on (1) a

19 new rule of constitutional law, made retroactive to cases on collateral review by the Supreme

20 Court that was previously unavailable, or if there is (2) a factual predicate that could not have

21 been previously discovered through the exercise of due diligence; and (B) the facts underlying

22 the claim would be sufficient to establish by clear and convincing evidence that but for

23

24

1    constitutional error, no reasonable fact finder would have found the applicant guilty of the

2    underlying offense. 28 U.S.C. §2254(e)(2) (1996).

3         Petitioner's claims rely on established rules of constitutional law. Further, there are no

4    factual issues that could not have been previously discovered by due diligence. Finally, the facts

5    underlying petitioner's claims are insufficient to establish that no rational fact finder would have

6    found him guilty of the crime. Therefore, this Court concludes that an evidentiary hearing is not

7    necessary to decide this case.

8                              STANDARD OF REVIEW

9         Federal courts may intervene in the state judicial process only to correct wrongs of a

10   constitutional dimension. *Engle v. Isaac*, 456 U.S. 107 (1983). Section 2254 explicitly states that

11   a federal court may entertain an application for writ of habeas corpus "only on the ground that

12   [petitioner] is in custody in violation of the constitution or law or treaties of the United States."

13   28 U.S.C. § 2254(a) (1995). The Supreme Court has stated many times that federal habeas

14   corpus relief does not lie for mere errors of state law. *Estelle v. McGuire*, 502 U.S. 62 (1991);

15   *Lewis v. Jeffers*, 497 U.S. 764 (1990); *Pulley v. Harris*, 465 U.S. 37, 41 (1984);

16        A habeas corpus petition shall not be granted with respect to any claim adjudicated on the

17   merits in the state courts unless the adjudication either: (1) resulted in a decision that was

18   contrary to, or involved an unreasonable application of, clearly established federal law, as

19   determined by the Supreme Court; or (2) resulted in a decision that was based on an

20   unreasonable determination of the facts in light of the evidence presented to the state courts. 28

21   U.S.C. §2254(d). Further, a determination of a factual issue by a state court shall be presumed

22   correct, and the applicant has the burden of rebutting the presumption of correctness by clear and

23   convincing evidence. 28 U.S.C. §2254(e)(1).

24

DISCUSSION

Petitioner argues that his trial counsel was ineffective for failing to request a limiting instruction instructing the jury that evidence of other sexual misconduct could only be used to determine whether he had a "lustful disposition" toward CR (Dkt. 1, p. 5).  In order to establish that petitioner was ineffectively assisted by counsel, petitioner must show that counsel's representation fell below an objective standard of reasonableness and that the deficient performance affected the result of the proceeding.  *Strickland v. Washington*, 466 U.S. 668, 686 (1984). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  *Id.* at 689.  In order to demonstrate prejudice, petitioner must show there is a reasonable probability that but for counsel's unprofessional errors, the result would have been different.  *Strickland*, 466 U.S. at 694.

Our "[r]eview of counsel's performance is highly deferential and there is a strong presumption that counsel's conduct fell within the wide range of reasonable representation." *Ortiz v. Stewart*, 149 F.3d 923, 932 (9th Cir. 1998) (*citing Hensley v. Crist*, 67 F.3d 181, 184 (9th Cir. 1995)).

The court first considers the totality of the circumstances, viewed at the time of counsel's conduct and determines whether counsel's assistance was reasonable.  *Strickland*, 466 U.S. at 690.  Petitioner must show that the attorney's conduct reflects a failure to exercise the skill, judgment, or diligence of a reasonably competent attorney.  *United States v. Vincent*, 758 F.2d 379, 381 (9th Cir.), *cert. denied*, 474 U.S. 838 (1985).  Petitioner must rebut "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and that counsel's performance was "sound trial strategy."  *Id*. at 689.  This court must attempt to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of

1  counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the

2  time." *Id*.

3      Next, petitioner must demonstrate prejudice -- that but for counsel's unprofessional

4  errors, the result would have been different.  *Strickland*, 566 U.S. at 694.  This court must

5  determine whether counsel's errors or omissions rendered the proceeding fundamentally unfair

6  or the result, unreliable.  *Lockhart v. Fretwell*, 506 U.S. 368-72 (1993).   To meet the second

7  *Strickland* requirement of prejudice, "defendant must show that there is a reasonable probability

8  that, but for counsel's unprofessional errors, the result of the proceeding would have been

9  different.  A reasonable probability is a probability sufficient to undermine confidence in the

10  outcome." Id. at 694.

11      Under the Antiterrorism and Effective Death Penalty Act (AEDPA), it is not enough for a

12  petitioner to convince this court that the state court applied *Strickland* incorrectly; rather,

13  petitioner must show that the state court applied *Strickland* in an objectively unreasonable

14  manner. 28 U.S.C.A. § 2254 (d) (1); *see Harrington v. Ritcher*, No. 09-587 2011 WL 148587

15  (U.S. January 19, 2011); *Bell v. Cone*, 535 U.S. 685 (2002).

16      Both the Washington State Court of Appeals and the Washington State Supreme Court

17  addressed this issue and held that the claim fails even though counsel submitted an affidavit

18  stating that he forgot to request the instruction and it was not trial strategy (Dkt. 8, Exhibit 16, pp

19  5-6 and Exhibit 19, pp. 3-4)  Both Courts note that the defense was an attack on CR's credibility

20  and for counsel to request an instruction of this nature would have undermined that strategy.  The

21  Washington State Supreme Court stated:

22          Finally, Mr. Russell does not show that the Court of Appeals erred in
         finding no demonstration of prejudice from the failure to ask for a limiting
23          instruction.  *See State v. Gresham*, 173 Wn.2d 405, 423-25, 269 P.3d 207 (2012)
         (failure to request a limiting instruction relating to evidence of prior sexual

24

1       offenses may be harmless error). Even with a limiting instruction the jury could
2       have considered the other acts as evidence of Mr. Russell's lustful disposition
    toward the victim. Mr. Russell does not show that in light of all of the evidence
3       there is a reasonable possibility the outcome would have been different had a
    limiting instruction been given. And since an instruction would have told the jury
4       it could consider the other acts as evidence of lustful disposition, it is not
    necessarily professionally deficient to not ask for such an instruction
5       notwithstanding counsel's claim here that he simply forgot to request an
    instruction. *See State v. Humphries*, __ Wn. App. ___ , 285 P. 3d 917, 917
6       (2012). (limiting instruction may legitimately be rejected to avoid reemphasizing
    damaging evidence).

7   (Dkt. 8, Exhibit 19, pp. 3-4). The United State Supreme Court has held that the failure to request

8   a limiting instruction does not necessarily amount to ineffective assistance of counsel and courts

9   should consider the totality of the evidence. *Berghuis v. Thompkins*, 560 U.S. 370, 389-91

10  (2010). This is the analytical framework the Washington State Supreme Court employed when it

11  stated "Mr. Russell does not show that in light of all of the evidence there is a reasonable

12  possibility the outcome would have been different had a limiting instruction been given." (Dkt.

13  8, Exhibit 19, p. 4). Petitioner fails to show that the ruling of the state court is objectively

14  unreasonable. The rulings of the state court do not violate clearly established law as decided by

15  the United States Supreme Court or are unreasonable in light of the evidence. 28 U.S.C.

16  §2254(d). Petitioner fails to prove that he is entitled to relief. Accordingly, the Court

17  recommends denial of this petition.

18  CERTIFICATE OF APPEALABILITY

19      Petitioner seeking post-conviction relief under 28 U.S.C.§ 2254 may appeal a district

20  court's dismissal of the federal habeas petition only after obtaining a certificate of appealability

21  (COA) from a district or circuit judge. A certificate of appealability may issue only if petitioner

22  has made "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. §

23  2253(c)(2). Petitioner satisfies this standard "by demonstrating that jurists of reason could

24

REPORT AND RECOMMENDATION - 8

disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (*citing Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  Pursuant to this standard, this Court concludes that petitioner is not entitled to a certificate of appealability with respect to this petition.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge.  *See* 28 U.S.C. § 636(b)(1)(C).  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on October 10, 2014, as noted in the caption.

Dated this 11th day of September, 2014.

J. Richard Creatura
United States Magistrate Judge